

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2006 JAN 30  PM 2: 49

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES RAY AUSTIN | CIVIL ACTION |
| VERSUS | NO. 05-2690 |
| ST. TAMMANY PARISH SHERIFF'S OFFICE  ET AL. | SECTION "K" (2) |

### REPORT AND RECOMMENDATION

Plaintiff, James Ray Austin, is a convicted prisoner currently incarcerated in Pine Prairie, Louisiana.  He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against the St. Tammany Parish Sheriff and one of his deputies, later identified in an amended complaint as Daniel Chauvin, and Target, Inc.  Austin alleges that he was injured as a result of being subjected to excessive force by Deputy Chauvin during his arrest in February 2005 for shoplifting at a Target store in Covington. He also alleges that he was exposed to unconstitutionally unsanitary conditions while confined in the holding cell at the St. Tammany Parish Jail in Covington, Louisiana, and that he

___ Fee_____
___ Process_____
X  Dktd_____
/  CtRm:Dep_____
___ Doc. No._____

was not provided with adequate medical care.  He seeks damages.  Record Doc. No. 1 (Complaint at ¶ V).

On August 18, 2005, I conducted a telephone conference in this matter. Participating were plaintiff pro se and Paul Hughes, counsel for the St. Tammany Parish sheriff and his deputies.  Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated based on his conviction on May 25, 2005, Record Doc. No. 1 (Complaint at ¶ III(A)), for attempted shoplifting arising from the same incident upon which he bases his claims in this case.  He stated that he is serving a sentence of three-and-a-half years in prison.

Austin confirmed that he asserts four kinds of claims in this case: (1) Deputy Chauvin used excessive force against him when he arrested Austin on the shoplifting charge in the Target store. (2) Target, Inc. is also responsible for the personal injuries he suffered as a result of Chauvin's use of force. (3) He was exposed to unconstitutionally unsanitary conditions in the holding tank at the St. Tammany Parish jail, resulting in illness and injury. (4) He received inadequate medical care for the injuries he suffered as a result of Chauvin's use of force.

As to his first claim, Austin testified that he was arrested on February 11, 2005 at about 5:36 p.m. in the Target store in Covington.  He stated that he was in the store and had "pocketed some items," but he was apprehended before he left the store.  Plaintiff testified that he was brought to "the security room" at the store, where the items he had stolen were removed from his person and he was handcuffed behind his back and seated in a chair.  Austin said that when Deputy Chauvin left the room, he stood up, walked to a table in the room, turned his back to the table, picked up a pack of chewing gum with his handcuffed hands, unwrapped a piece of gum, placed it in his mouth and returned to his seat.  He testified that when Deputy Chauvin returned to his seat, a Target security guard told the deputy that Austin had removed something from the table, so they looked at a tape recording from a surveillance camera that was running in the room and saw that Austin had in fact taken something from the table.

Plaintiff testified that he was then "slung into the wall" by Chauvin, who "jerked my pants down past my knees, foot in my back, at one point he choked me, and this was caught on tape, surveillance."  He characterized Chauvin's actions as excessive force because he was in a sitting position, handcuffed behind his back, and he was not trying to fight or otherwise resist Chauvin.  Plaintiff identified the Target security guard who alerted Chauvin to Austin's actions as Mr. Smitherman.

3

Austin stated that Chauvin "choked me down to see that I had a piece of gum in my mouth." Specifically, "I was . . . in a sitting position, I was jerked from a chair, slammed into the wall, then slammed down on the ground, my pants were jerked down past my knees, . . . and [the deputy] was searching me, while I was on my belly with my pants down. He then jerked me off the ground, pulled up my pants, and took the cuffs off, . . . cuffed my hands in front of my body and then put me in what he called a 'mercy hold' . . . he had my hand twisted back, like trying to touch my arm, and he was telling me he was going to break my arm." Austin said the deputy released him when Austin told him he was "caught on tape." Austin said the deputy's use of force was observed by another witness named Larry Tassin.

Plaintiff testified that he subsequently pled guilty to attempted shoplifting. He stated that he suffered back and neck injuries as a result of Chauvin's use of force. He described these injuries as, at first, having a hard time walking and standing straight and a crick in his neck and presently as continuing pain for which he is taking Flexeril that has been provided by medical personnel at the jail.

Asked if the deputy struck him, he said he thought he had put a foot in his back and that he had choked him at one point, but that the entire episode happened so quickly that he could not tell if he had been struck.

4

As to his second claim against Target, Inc., Austin alleged only that he feels Target is responsible because he was hurt on store property and he never actually left the store with the goods he had stolen. He said that the store is partially responsible for his injuries, although no Target employee participated in the use of force against him, because "they were involved, . . . they were right there at the incident." He added that the Target security officer also was the one who had told Chauvin that while the deputy was out of the room Austin had gotten up from his chair and removed something from the table, but Austin admitted that what the Target employee told Chauvin was in fact true.

Concerning his third claim, that he was exposed to unsanitary conditions in the jail, Austin alleged in his complaint that being "in holding for a long period of time with no shower and forced to sleep on [a] contaminated floor in a cold environment on cement without shower facilities is a deprivation of my rights." Record Doc. No. 1 (Complaint at ¶ V). He testified that when he was first arrested, he was kept in a dirty "72-hour holding tank" for six or seven days. He stated that while in the holding tank he was given no opportunity to shower, could not brush his teeth and contracted a staph infection at four spots on his body, one on his thumb, one on each cheek and one on his chin. He testified that because of the infection, he was taken from the jail by St.

5

Tammany Parish sheriff's deputies to a hospital in Bogalusa, Louisiana, for treatment a couple of days after being taken out of the holding tank.

Austin testified that while in the holding tank and shortly after contracting the infection, he was seen by a woman doctor at the jail, who diagnosed the staph infection and provided him with antibiotics both through injections and pills. He said that within three or four days he was taken to a hospital in Bogalusa, where his thumb was cut open and some of the infection was removed. The other areas of infection were also examined and he was returned to the jail after three or four hours in the hospital. He said that after returning to jail, he continued to be provided with antibiotics for a period of a couple of weeks until the infection cleared up within about a month. He said he continues to experience minor rash problems for which he is being treated by the doctor at the jail with a steroid skin cream and some kind of soap.

Austin testified that his claim of inadequate medical treatment does not relate to his staph infection treatment, but instead relates to his back problems resulting from Chauvin's use of force. He stated that he has received treatment for his back problems only recently when he began to receive Flexeril. He complained that he has received no Cat scans or x-rays to find out what his back problems are. He said the doctor at the jail had begun prescribing Flexeril for his back only about a week before the conference. He testified that the Flexeril has improved his back pain.

6

Following the conference, pursuant to my order, Record Doc. Nos. 21, 23 and 27, defense counsel provided me with a copy of a surveillance film of the incident at the Target store and which plaintiff contended would support his excessive force claim. Plaintiff requested that I review the tape, and I have done so. Most of the tape shows two men, presumably Austin and an accomplice, presumably Lawrence Tassin, pocketing items they apparently intended to shoplift from the Target store. The tape also shows Austin and Tassin being stopped at the store door as they attempt to leave with their shoplifted goods and being led to a back room by security personnel at the store. The surveillance tape in the back room shows Austin and Tassin, their hands cuffed behind their backs, seated near a table, where various items taken from their persons have been spread in plain view. When security officers leave the room, the tape shows Austin, hands cuffed behind his back, stand up from his chair, move to the table, pick something up in his hands and move back to his seat. The tape then shows a man in plain clothes return to the room, point at the table and then move toward Austin and search him briefly. The tape next shows a uniformed sheriff's deputy, presumably Chauvin, enter the room, sit down in a chair at the table and begin to write on paper he holds in his lap. Unfortunately, at that point, no further picture is visible on the tape, and only static can be seen, although it is clear that whatever happened in the room thereafter, if anything, has not yet occurred.

## ANALYSIS

I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action

is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994)

(quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as

amended).  A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis

v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th

Cir. 1994).  The law "'accords judges not only the authority to dismiss a claim based on

an indisputably meritless legal theory, but also the unusual power to pierce the veil of the

complaint's factual allegations and dismiss those claims whose factual contentions are

clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th

Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of

a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal

basis of the claims.  Spears, 766 F.2d at 180.  "[T]he Spears procedure affords the

plaintiff an opportunity to verbalize his complaints, in a manner of communication more

comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at

such an evidentiary hearing is in the nature of an amended complaint or a more definite

statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

8

1991); Adams v. Hansen, 906 F.2d 192, 194 (5th Cir. 1990).  "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists."  Spears, 766 F.2d at 182.

The court may make only limited credibility determinations in a Spears hearing, Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997) (citing Cay v. Estelle, 789 F.2d 318, 326-27 (5th Cir. 1986), overruled on other grounds by Denton v. Hernandez, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon tangible items as additional evidence, as long as they are properly identified, authentic and reliable.  "The Court should allow proper cross-examination and should require that the parties properly identify and authenticate documents."  Id. (citing Wilson, 926 F.2d at 482-83; Williams v. Luna, 909 F.2d 121, 124 (5th Cir. 1990)).

After a Spears hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, Jackson v. Vannoy, 49 F.3d 175, 176-77 (5th Cir. 1995); Moore v. Mabus, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible."  Id. at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.'"  Davis, 157 F.3d at 1005 (quoting McCormick v. Stalder,

9

105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." Moore, 976 F.2d at 269.

In this case, three of the four claims in plaintiff's complaint must be dismissed under 28 U.S.C. § 1915(e), either as frivolous because they lack an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims and under the broadest reading.[1]   Plaintiff's remaining claim, however, that he was subjected to excessive force by Deputy Chauvin during his arrest, cannot be dismissed at this time and requires further proceedings.

## II.   EXCESSIVE FORCE

Claims concerning excessive force used during and after an arrest implicate both the Fourth and Fourteenth Amendments. The Fourth Amendment provides a reasonableness standard concerning the use of force. Harper v. Harris County, 21 F.3d 597, 600 (5th Cir. 1994), reh'g denied, 29 F.3d 626 (1994). To succeed on such a claim, plaintiff bears the burden of proving that he was subjected to a use of force that was clearly excessive to the need, and the excessiveness of that need was objectively

---

[1]Pro se civil rights complaints must be broadly construed, Moore, 30 F.3d at 620, and I have broadly construed the complaint in this case.

unreasonable. Id. The test for reasonableness under the Fourth Amendment requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect was actively resisting arrest or attempting to evade arrest by flight. Graham v. Connor, 490 U.S. 386, 396 (1989). The reasonableness of the particular use of force must be judged from the perspective of a reasonable officer at the scene. Id. The question is whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting him, without regard to his underlying intent or motivation. Id. at 397.

The Fifth Circuit has also noted that under the Fourteenth Amendment: "[W]e explicitly acknowledge that where a plaintiff's excessive force claim, whether he be a prisoner, arrestee, detainee, or an innocent bystander of tender years, falls outside the specific protections of the Bill of Rights, that plaintiff may still seek redress under the due process clause of the Fourteenth Amendment." Petta v. Rivera, 143 F.3d 895, 911 n.25 (5th Cir. 1998) (citing Graham, 490 U.S. at 395 n.10); accord Flores, 381 F.3d at 401; Gutierrez v. City of San Antonio, 139 F.3d 441, 452 (5th Cir. 1998).

Under the Fourteenth Amendment standard, the court must ask whether defendant's "actions caused [plaintiff] any injury, were grossly disproportionate to the need for action under the circumstances and were inspired by malice rather than merely

11

careless or unwise excess of zeal so that it amounted to an abuse of official power that shocks the conscience." Petta, 143 F.3d at 902 (citing Shillingford v. Holmes, 634 F.2d 263, 265 (5th Cir. 1981) (emphasis added)). The "'extent of injury is one factor' to be considered [along] with 'the need for application of force, the relationship between that need and the amount of force used' and other factors, . . . [but] the extent of injury is only one relevant factor and cannot be exclusively determinative under the . . . substantive due process approach." Id. at 902 (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).

In the instant case, Austin's testimony, accepted as true for present purposes, sufficiently alleges a Fourth or a Fourteenth Amendment violation. Austin testified that Chauvin slammed him into a wall and into the ground, choked him, put a foot into his back and twisted his handcuffed arm behind his back, all without any provocation or resistance except that he may have been chewing gum. The surveillance tape does nothing to refute these allegations, but instead serves only to cause the court to wonder whether some incriminating part of it has been erased. Under these circumstances, plaintiff's claim that Deputy Chauvin used excessive force against him cannot be dismissed at this time, and further proceedings are required.

III.   LIABILITY OF TARGET, INC.

Austin's claim against defendant Target, Inc. is based on his belief that the private owner of a retail establishment is somehow responsible for the personal injuries he

allegedly suffered at the hands of a sheriff's deputy.  No such liability conceivably exists, under either Section 1983 or Louisiana state law.

First, Target, Inc. cannot be liable to Austin under Section 1983 because the private corporation cannot be a state actor in the context described in Austin's testimony. To be successful under Section 1983, a plaintiff must establish that the defendant has acted under color of state law in violating his rights. <u>Daniels v. Williams</u>, 474 U.S. 327, 106 S.Ct. 662, 88 L. Ed. 2d 662 (1986).  Action taken under color of state law for purposes of Section 1983 requires a defendant's use of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" and when the defendant is engaged in the "performance of official duties." <u>United States v. Causey</u>, 185 F.3d 407, 415 (5th Cir. 1999).  To state a claim under Section 1983, a plaintiff must show "(1) deprivation of a right, privilege or immunity secured by the federal laws or Constitution (2) <u>by</u> <u>one</u> <u>acting</u> <u>under</u> <u>color of state law</u>." <u>Mississippi Women's Medical Clinic v. McMillan</u>, 866 F.2d 788, 791 (5th Cir. 1989) (emphasis added); <u>Morris v. Dearborne</u>, 181 F.3d 657, 666 n.6 (5th Cir. 1999).  Plaintiff must show that defendant's actions are "fairly attributable to the state." <u>West v. Atkins</u>, 487 U.S. 42, 49 (1988).

Under no circumstances can Target, Inc., named by plaintiff as a defendant in this matter, be considered a state actor. <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981);

13

Hudson v. Hughes, 98 F.3d 868, 873 (5th Cir. 1996); Mills v. Criminal District Court No. 3, 837 F.2d 677, 679 (5th Cir. 1988).  Because defendant is not a state actor, plaintiff's Section 1983 claims against this defendant, if any, have no basis in federal law and must be dismissed for failure to state a cognizable claim.

In addition, plaintiff was not falsely arrested or detained.  He is in fact guilty of the attempted shoplifting with which he was charged.  Target employees played no role in the force allegedly used against him.  Under these circumstances, I can conceive of no legal basis on which Target, Inc. may be liable, and plaintiff has alleged none.  Target, Inc. should be dismissed.

IV.     CONDITIONS OF CONFINEMENT

Plaintiff asserts that he was subjected to unconstitutionally unsanitary conditions in the jail's holding tank for six or seven days during which he was forced to sleep on a cold contaminated cement floor and was unable to shower or brush his teeth.  Austin was a pretrial detainee for the time period about which he complains. Regardless whether an inmate is a pretrial detainee or a convicted prisoner, however, the standard of liability is the same for episodic acts or omissions of jail officials of the type alleged in this case. Olabisiomotosho v. City of Houston, 185 F.3d 521, 526 (5th Cir. 1999); Hamilton v. Lyons, 74 F.3d 99, 104 n.3 (5th Cir. 1996);  Hare v. City of Corinth, 74 F.3d 633, 650 (5th Cir. 1996) (en banc).  In Hare, the Fifth Circuit held

14

> (1) that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement; and (2) that a state jail official's liability for episodic acts or omissions cannot attach unless the official had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk.

Id.

Here, there is nothing in plaintiff's written submissions or Spears testimony from which it might be inferred that the conditions he described were the result of a prison official's act either "implement[ing] a rule or restriction or otherwise demonstrat[ing] the existence of an identifiable intended condition or practice" or that the "official's acts or omissions were sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by other officials, to prove an intended condition or practice." Id. at 645.  On the contrary, in this case, "'the complained-of harm is a particular act or omission of one or more officials,'" Olabisiomotosho, 185 F.3d at 526 (quoting Scott v. Moore, 114 F.3d 51, 53 (5th Cir. 1997) (en banc)), and the deliberate indifference standard enunciated in Estelle v. Gamble, 429 U.S. 97, 104 (1976), applies.

As to these particular claims, Austin's allegations do not constitute violations of the Constitution.  Two requirements must be met before Section 1983 liability will arise for constitutional violations relating to conditions of confinement of the type plaintiff described. First, the alleged deprivation must objectively be "sufficiently serious," which

15

means that "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 847 (1994). To rise to the level of a constitutional violation, the conditions must be "'so serious as to deprive [plaintiff] of the minimal measure of life's necessities,' in this case the basic human need for sanitary conditions." Alexander, 351 F.3d at 630 (quoting Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995)). Second, the inmate must show that a prison official was deliberately indifferent to inmate health or safety. Id. A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837 (emphasis added).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

Southard v. Texas Bd. of Crim. Justice, 114 F.3d 539, 551 (5th Cir. 1997) (citing Board of County Comm'rs v. Brown, 520 U.S. 397 (1997) (other citations omitted)) (emphasis added). "'Subjective recklessness,'" as used in the criminal law, is the appropriate test

16

for deliberate indifference."  Norton, 122 F.3d at 291 (citing Farmer, 511 U.S. at 838-40).

In the instant case, the "deliberate indifference" standard applies because all of plaintiff's complaints concerning the conditions relate to jail officials' episodic acts or omissions, and no challenge is made to "the general conditions and restrictions of [plaintiff's] confinement, knowingly imposed."  Hamilton, 74 F.3d at 104 n.3.  Thus, Austin must allege facts sufficient to establish that any defendant knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it.  Plaintiff fails to allege any such facts when he complains about temporary conditions, including six or seven days in a 72-hour holding tank.  Although the conditions he described may be unpleasant, including no mattress or opportunity to shower and otherwise dirty conditions, plaintiff has failed to allege either deprivations so extreme that they violate the Constitution or sufficiently serious harm resulting from these problems to meet the requirements of Farmer, and this claim does not rise to the level of constitutional violation.

A short term sanitation restriction or problem, although admittedly unpleasant, does not amount to a constitutional violation. Whitnack v. Douglas County, 16 F.3d 954, 958 (8th Cir. 1994); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992); Robinson v. Illinois State Corr. Ctr., 890 F. Supp. 715, 720 (N.D. Ill. 1995).  "[J]ails must provide

17

only reasonably adequate hygiene and sanitation conditions." Burton v. Cameron County, 884 F. Supp. 234, 241 (S.D. Tex. 1995) (citing Green v. Ferrell, 801 F.2d 765, 771 (5th Cir. 1986)).  None of Austin's allegations about his six or seven day stay in the holding tank establish constitutional violations.  Although he alleged that he contracted a staph infection, he also conceded that he was provided with immediate and effective medical care which cured the infection and about which he has no complaints.  Serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." Holloway v. Gunnell, 685 F.2d 150, 156 (5th Cir. 1982).  Courts have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." Talib v. Gilley, 138 F.3d 211, 215 (5th Cir. 1998) (citing Rhodes v. Chapman, 452 U.S. 337, 349 (1981)).

V.    MEDICAL CARE

It appears that Austin was a pretrial detainee for part of the time and a convicted prisoner at all other times about which he complains about the care for his backache. Before the Fifth Circuit's decision in Hare v. City of Corinth, 74 F.3d 633 (5th Cir. 1996), it appeared that prison officials must provide pretrial detainees with reasonable medical care unless the failure to provide it was reasonably related to a legitimate government interest. Bell v. Wolfish, 441 U.S. 520, 539 (1979); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992); Cupit v. Jones, 835 F.2d 82, 85 (5th Cir. 1987).  The inquiry

18

was "whether the denial of medical care . . . was objectively reasonable in light of the

Fourteenth Amendment's guarantee of reasonable medical care and prohibition on

punishment of pretrial detainees." Pfannstiel v. City of Marion, 918 F.2d 1178, 1186

(5th Cir. 1990), abrogated on other grounds as recognized in Martin v. Thomas, 973 F.2d

449, 455 (5th Cir. 1992).

> In Hare, however, the Fifth Circuit held:
>
> (1) that the State owes the same duty under the Due Process Clause and the
> Eighth Amendment to provide both pretrial detainees and convicted
> inmates with basic human needs, including medical care and protection
> from harm, during their confinement; and (2) that a state jail official's
> liability for episodic acts or omissions cannot attach unless the official had
> subjective knowledge of a substantial risk of serious harm to a pretrial
> detainee but responded with deliberate indifference to that risk.

Hare, 74 F.3d at 650.   The Fifth Circuit explained that for the Bell "reasonable

relationship" test to be applicable, the pretrial detainee must be able to show that a prison

official's act either "implement[s] a rule or restriction or otherwise demonstrate[s] the

existence of an identifiable intended condition or practice" or that the "official's acts or

omissions were sufficiently extended or pervasive, or otherwise typical of extended or

pervasive misconduct by other officials, to prove an intended condition or practice." Id.

at 645.  If the pretrial detainee is unable to prove either, the incident will be considered

to be an episodic act or omission and the deliberate indifference standard enunciated in

Estelle v. Gamble, 429 U.S. 97, 104 (1976), will apply.  Id.

19

In Estelle, the Supreme Court held that a convicted prisoner may succeed on a claim for damages under 42 U.S.C. § 1983 for inadequate medical care only if he demonstrates that there has been "deliberate indifference to serious medical needs" by prison officials or other state actors. Only deliberate indifference, "an unnecessary and wanton infliction of pain . . . or acts repugnant to the conscience of mankind," constitutes conduct proscribed by the Eighth Amendment. Id. at 105-06; accord Gregg v. Georgia, 428 U.S. 153, 182-83 (1976); Hare, 74 F.3d at 650. "Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and [he] disregards that risk by failing to take reasonable measures to abate it." Farmer v. Brennan, 511 U.S. 825, 847 (1994). The Farmer definition applies to Eighth Amendment medical claims. Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994).

An inmate must satisfy two requirements to demonstrate that a prison official has violated the Eighth Amendment. "First, the deprivation alleged must be, objectively, 'sufficiently serious'; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." Farmer, 511 U.S. at 834 (quotation omitted). Thus, plaintiff must show deliberate indifference to his "serious medical needs" to satisfy this prong. Wilson v. Seiter, 501 U.S. 294, 297 (1991); Mendoza v. Lynaugh, 989 F.2d 191, 193 (5th Cir. 1993).

20

Further, the plaintiff must establish that the defendant possessed a culpable state of mind. <u>Farmer</u>, 511 U.S. at 838 (citing <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991)). A prison official cannot be held liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837. "Mere negligence or a failure to act reasonably is not enough. The officer must have the subjective intent to cause harm." <u>Mace v. City of Palestine</u>, 333 F.3d 621, 626 (5th Cir. 2003). If the court finds that one of the components of the test is not met, it need not address the other component. <u>Davis v. Scott</u>, 157 F.3d 1003, 1005 (5th Cir. 1998).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. <u>Board of the County Commissioners of Bryan County, Oklahoma v. Brown</u>, 520 U.S. 397, 117 S.Ct. 1382, 1391 (1997) . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

<u>Southard v. Texas Bd. of Crim. Justice</u>, 114 F.3d 539, 551 (5th Cir. 1997) (citations omitted) (emphasis added). "'Subjective recklessness,' as used in the criminal law, is the appropriate test for deliberate indifference." <u>Norton</u>, 122 F.3d at 291.

In the instant case, plaintiff's pleadings as expanded by his testimony establish that nothing more than episodic acts or omissions as defined in <u>Hare</u> are at issue in this case.

Thus, the "deliberate indifference" standard applies and plaintiff must allege facts sufficient to establish that defendants knew he faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. In this case, Evans fails completely to allege facts sufficient to establish deliberate indifference.

Plaintiff's testimony negates any inference that defendants acted with deliberate indifference to serious medical needs. Initially, it cannot be concluded that the backache condition Austin described presented a serious medical need that posed a substantial risk of harm during his incarceration at the jail. See Lusk v. Dallas County Sheriff's Dep't, No. 3:00-CV-0662L, 2002 WL 31757706, at *4 (N.D. Tex. Nov. 29, 2002) (Lindsay, J.) (herniated disc and degenerative spinal disease not serious medical needs); Nelson v. Rodas, No. 01CIV7887RCCAJP, 2002 WL 31075804, at *14 (S.D.N.Y. Sept. 17, 2002) (Peck, M.J.) (back spasms and pain not a serious medical need); Solomon v. Moore, No. 97 Civ. 0201(KTD), 2000 WL 385521, at *2-3 (S.D.N.Y. Apr. 14, 2000) (Duffy, J.) (when plaintiff was able to walk and function normally despite neck, back and groin pains, he had no serious medical needs); compare Palermo v. Correctional Med. Servs. Inc., 133 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) (Moreno, J.) (Plaintiff who suffered from constant, severe back pain that greatly limited his mobility and had a ruptured spinal disk, for which a neurosurgeon had recommended surgery, had a serious medical need). Austin's testimony about his back problems did not identify any serious risks of

22

harm or any actual harm resulting from the alleged delays in treatment, and they do not rise to the level of serious medical needs for purposes of constitutional analysis.

Even assuming that plaintiff's back problem was a serious condition for constitutional purposes, he has alleged facts, confirmed by the medical records, that negate any inference of deliberate indifference by jail officials. Plaintiff's complaint as amended by his testimony shows that he received constitutionally adequate medical care while incarcerated at the St. Tammany Parish Jail when he has been provided with Flexeril for his back problems, and he acknowledged in his testimony that the medication has alleviated his back pain.

Although plaintiff has alleged delay in receiving medical care, and he has expressed dissatisfaction with the speed and effectiveness of his treatment, none of his allegations rise to the level of deliberate indifference necessary to establish a constitutional violation cognizable under Section 1983.

First, mere delay in receiving care is not in and of itself a constitutional violation. Mendoza, 989 F.2d at 195; Wesson v. Oglesby, 910 F.2d 278, 284 (5th Cir. 1990); Simons v. Clemens, 752 F.2d 1053, 1056 (5th Cir. 1985). Regardless of the length of delay, plaintiff at a minimum must show deliberate indifference to serious medical needs. Wilson, 501 U.S. at 298. The delay about which plaintiff complains did not cause "a life-long handicap or permanent loss" sufficient to constitute a serious medical need for

constitutional purposes. See Hill v. Dekalb Reg'l Youth Detention Ctr., 40 F.3d 1176,

1188 (11th Cir. 1994) (citing Monmouth County v. Lanzaro, 834 F.2d 326, 347 (3d Cir.

1987) ("Where the delay [in medical care] results in an inmate's suffering 'a life-long

handicap or permanent loss, the medical need is serious.'")); Wesson, 910 F.2d at 283-84

(minor delay in escorting injured prisoner to prison infirmary for treatment of swollen

wrists with some bleeding cannot be construed as deliberate indifference to serious

medical needs).  No such permanent loss resulting from delay has been alleged in this

case.

Contentions like Austin's that amount to a mere disagreement with the speed,

quality or extent of medical treatment or even negligence do not give rise to a Section

1983 claim. "[A]lthough inadequate medical treatment may, at a certain point, rise to the

level of a constitutional violation, malpractice or negligent care does not." Stewart v.

Murphy, 174 F.3d 530, 534 (5th Cir. 1999) (citation omitted) (active treatment of

prisoner's serious medical condition, which ultimately resulted in death, does not

constitute deliberate indifference, even if treatment was negligently administered); see

also Norton, 122 F.3d at 291-92; Varnado v. Lynaugh, 920 F.2d 320, 321 (5th Cir.

1991); Mendoza, 989 F.2d at 193 (prisoner's disagreement with the type or timing of

medical services provided cannot support a Section 1983 claim); Wesson, 910 F.2d at

284 (allegations establishing provision of medical treatment found inconsistent with

24

inference of deliberate indifference).  Therefore, plaintiff's complaints in this case about

his medical care advance a legally frivolous argument and fail to state a claim for relief

under Section 1983.

### RECOMMENDATION

For all of the foregoing reasons, **IT IS RECOMMENDED** that plaintiff's claims

against Target, Inc. and his claims of inadequate medical care and unconstitutional

conditions of confinement be **DISMISSED WITH PREJUDICE** as legally frivolous

and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2).

**IT IS FURTHER RECOMMENDED** that the court conduct further proceedings

as to plaintiff's claims against defendant Deputy Chauvin that plaintiff was subjected to

excessive force during his arrest.

A party's failure to file written objections to the proposed findings, conclusions,

and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).


New Orleans, Louisiana, this _____ day of January, 2006.


_____

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE